## CIRCUIT COURT OF THE CITY OF NORFOLK

S. L. Nusbaum Realty Co.

v.

Centillion Corp.

June 23, 1995

Case No. (Law) L97-100

BY JUDGE CHARLES E. POSTON

Several grounds were stated in support of the demurrer, and each will be addressed *seriatim*. These issues will be considered in the manner framed by the defendant in its demurrer.

### *Declaratory Judgment*

It is clear that Virginia's declaratory judgment statute, Code §§ 8.01-184 ff., do not vest the Court with jurisdiction to render advisory opinions, but the Court does have authority to adjudicate the rights of parties when a justiciable controversy is presented. *Reisen v. Aetna Life & Cas. Co.*, 225 Va. 327, 331 (1983). Further, these statutes are remedial in nature and are to be "liberally interpreted and administered with a view to making the courts more serviceable to the people." Code § 8.01-191. The authority to issue declaratory judgments extends to "[c]ontroversies involving the interpretation of deeds, wills, *and other instruments of writing* ... ." Code § 8.01-184 (emphasis added). A justiciable controversy has been defined as one where "specific adverse claims based upon present rather than future or speculative facts are ripe for judicial adjustment." *City of Fairfax v. Shanklin*, 205 Va. 227, 229 (1964) (decided under prior law).

Here the plaintiff asserts a cause of action based upon a written instrument, namely a lease for certain real property. It is alleged that in the lease, the lessor committed to pay the plaintiff a commission if it sold the property to the lessee. The motion for judgment alleges that a contract for the sale of the property has

been entered into between the lessor and lessee and that the lessor has refused the plaintiff's demand for payment of a commission as the lease is alleged to provide. It is also alleged that the lease was subsequently modified by an oral contract making contiguous real property (which was identified in the "plat" attached to the lease) subject to the alleged real estate "listing" agreement which was contained in the lease. The motion for judgment, then, presents a justiciable controversy. Consequently, the Court holds that the declaratory judgment action is appropriate.

### Statute of Frauds

The portion of the contract which plaintiff alleges was orally modified states:

> (b) Landlord agrees that if, during or within 365 days after the termination of the term, Landlord sells the demised premises, or any portion thereof, to Tenant, or to any member of Tenant's family, or to any person, firm, or corporation in which Tenant is interested as a stockholder, director, officer, partner, owner, or employee, Landlord will treat said sale as if Agent had been the exclusive agent in making said sale and will pay to Agent a commission equal to 7% of the selling price.

Plaintiff's Exhibit A at 4. This section clearly indicates that the plaintiff is to be paid a 7% commission on the sale of the "demised premises" (i.e., the parking lot that Freedom Ford leased from the defendant). In fact, the defendant admits as much in its demurer:

> [P]laintiff's claim for a seven percent (7%) commission of the total purchase price of the real property … is limited by the General Commercial Lease dated March 14, 1992, paragraph 37(b), which provision limits the entitlement of the plaintiff to a commission to the value of the demised premises, which demised premises is specifically limited to the parking area to the rear of the building and improvements.

The plaintiff asserts that at the time of the execution of the lease, "the parties discussed and acknowledged that Freedom Ford was contemplating the ultimate purchase of the property, including, but not limited to, that portion of the property specifically governed by the Lease." *See* Motion for Judgment at

2-3. Plaintiff argues that this oral evidence should be admissible to prove the existence of such a contract. Under the parol evidence rule, evidence of this subsequent, oral modification would be admissible to prove a new and distinct agreement upon a new consideration; however, the defendant has raised Code § 11-2(7) as a defense. As pertinent here, that section states:

> Unless a promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof is in writing and signed by the party to be charged or his agent, no action shall be brought in any of the following cases ... .
>
> (7) Upon any agreement or contract for services to be performed in the sale of real estate by a party defined in § 54.1-2100 or § 54.1-2101 ... .

The plaintiff concedes that this section is applicable to the alleged oral contract.

It is instructive, for our purposes here, to examine the legislative intent behind the enactment of Code § 11-2(7):

> The legislative objective in enacting the statute requiring real estate services agreements and contracts to be in writing was to avoid frauds and perjuries, not to act as a bar to action by principals against their agents for fraud or breach of confidence. In short, this section of the statute of frauds was intended to protect the public from unscrupulous real estate agents and brokers, not to act as a shield behind which agents and brokers could seek refuge when their principals charge them with fraud or breach of faith. The purpose of Code § 11-2(6a) is to prevent fraud, not to protect the perpetrators of it.

*H-B Partnership v. Wimmer*, 220 Va. 176 (1979). While no fraud has been alleged in the case at hand, the plaintiff has come very close to alleging a breach of faith on the part of the defendant. The question then is: Should the defendant be estopped from asserting the statute of frauds as a defense? The plaintiff would answer that question in the affirmative.

The case of *H-B Partnership* is of no help in answering the above question as the Supreme Court expressly stated that it was "unnecessary to consider whether the defendant was estopped from asserting the statute of frauds." *Id.* at 178. Not so, with the case of *Murphy v. Nolte*, 226 Va. 76 (1983), which the plaintiff has cited in support of its argument that the lease is a sufficient

writing to take the alleged oral contract out of the operation of the statute of frauds.

In that case, an oral listing agreement was alleged to exist by a broker who had procured a buyer for the defendant's house. Plaintiff contended he was entitled to receive one-half of a seven percent commission on the total purchase price of the property sold. The defendant owners argued that plaintiff's claim was barred by the statute of frauds, Code § 11-2(6a), (now § 11-2(7)), because the only writing evidencing the existence of the alleged agreement was the sales contract which provided for a commission payment of only $2,500.00. Thus, the defendants argued that there was no writing evidencing the existence of the alleged agreement to pay plaintiff half of a seven percent commission.

In rejecting that defense, the Court first defined "real estate listing agreement" and then examined the sales contract for evidence that a real estate listing agreement existed.

> A real estate listing agreement is defined as a contract "between an owner of real property and a real estate agent, whereby the agent agrees to secure a buyer or tenant for specific property at a certain price and terms in return for a fee or commission." Thus the inquiry here is whether there is sufficient written evidence, signed by the sellers, authorizing Nolte to act as their agent to secure a buyer for the property at a specific price in return for a commission. Manifestly, there is.

*Id.* at 81 (*citing* Black's Law Dictionary 840 (5th ed. 1979)). Even though the sales contract did not specifically identify the total amount of commission the plaintiff claimed was to be paid, the Court found that it contained the basic terms of the agreement and was thus sufficient to remove the case from the purview of the statute of frauds:

> [W]hile the whole services agreement is not memorialized by the writing, nevertheless, the references in the sales contract are sufficient to remove the oral agreement from the operation of the statute of frauds. *The law does not require that the whole contract be in writing to be enforced when, as here, the memorandum relied on contains the essential terms of the agreement.*

*Id.* at 82 (emphasis added).

In the present case, the plaintiff asserts that "the same factual scenario is present in the case at bar and the same result should follow." Plaintiff's Memorandum in Opposition at 5. The core of the plaintiff's argument is that the lease agreement which it negotiated on behalf of Centillion Corporation and Freedom Ford "demonstrates the existence of the alleged agreement between Nusbaum and Centillion. The only issue is whether the commission to be paid will be calculated on only the portion of the property subject to the lease or on the entire property." Plaintiff's Memorandum in Opposition at 5-6.

As the defendant points out, there are several marked differences between *Murphy* and the present case:

> In *Murphy*, the listing agent distributed a flyer stating that the seller would pay a total commission of seven percent, to be divided equally between the listing and selling agents. The selling agent procured a buyer and presented a contract to the seller, which contract provided for a total commission of seven percent. The seller cut the selling agent out of the deal completely, entered into a contract directly with the buyer, inserted a flat commission into the contract, and did not even have the contract signed by the selling agent. When the seller offered the selling agent one-half of the flat commission, the selling agent refused and sued the seller. The facts in the *Murphy* case nearly amounted to fraud, the selling agent was clearly the procuring agent, and the agent for the seller had circulated a flyer which promised to pay a total commission of seven percent.

Defendant's Letter of March 22, 1995, at 2. These differences being present, the defendant argues that *Murphy* is of "no help at all to the plaintiff." With this assertion, the Court disagrees. Of primary importance to the Virginia Supreme Court was the underlying object of the statute of frauds, that is, "[t]he statute will not be applied when the result is to cause a fraud *or perpetrate a wrong* ... ." *Murphy*, 226 Va. at 81 (emphasis added). The Court stated that "[g]iven these facts, it would be unconscionable to apply the statute of frauds to deny Nolte a commission based on a rate clearly shown by the evidence and determined by the jury to be seven percent of the sales price ... . Adoption of the seller's argument would lead to the very type of unfair result the statute is designed to prevent." *Id.* at 82-83.

Taking the allegations in the Motion for Judgment as true, for purposes of the demurrer, it can be seen that an unconscionable result would follow should the Court decide to sustain the demurrer. Here, we have a contract or memorandum of the type contemplated in Code § 11-2(7) which is sufficient

to take the oral modification of it out of the purview of the statute of frauds. It enumerates the amount of the commission, to whom such commission is to be paid, and it is signed by the party to be charged. The Motion for Judgment states that the plaintiff "initially attracted Freedom Ford's interest in the Property and ... participated as Centillion's representative in ongoing and productive negotiations with Freedom Ford regarding this purchase and sale." Motion for Judgment at 3. Taking this as true, the plaintiff is entitled to the commission on the sale, and, therefore, the demurrer cannot be sustained.

In its Memorandum in Support at 3-4, the defendant states: "Without the protection of the Statute of Frauds, a seller could find himself being forced to pay a commission to an agent, simply because the agent met with both the seller and the buyer, even though neither the seller nor the buyer initiated or even desired the meeting with the agent." However, taking the allegations in the Motion for Judgment as true, the plaintiff was far more involved in this transaction than the above suggests. It negotiated a lease which was obviously the result desired by the defendant, and it further fostered the relationship between the defendant and Freedom Ford which resulted in the sale of the property. No, the contract does not, on its face, prove that the plaintiff is entitled to the full commission; however, it is enough to take the oral understanding between the parties out of the purview of the Statute of Frauds, thus giving the plaintiff an opportunity to convince the Court that it is entitled to the declaratory judgment for which it asks.

The defendant has made one further argument which must be addressed; specifically, defendant has asserted paragraph 34 of the lease as a defense. That paragraph states as follows:

> It is agreed that no change shall be made in this lease, except in writing signed by the parties hereto, setting forth the terms of the agreed modification.

At first blush, this language appears to seal the plaintiff's fate; however, no change in the lease has occurred here. There is nothing to suggest that any terms in the lease have been changed, but there is evidence to suggest that the parties had a subsequent understanding to compensate the plaintiff for its efforts. If, in fact, the plaintiff was working to close the sale of the entire parcel of land as it alleges, it is entirely reasonable for the plaintiff to expect compensation for its efforts. "These allegations do not preclude an allegation that the parties orally agreed, after execution of the written agreement, upon the construction of the agreement." *Kay v. Professional Realty Corp.*, 222 Va.

348, 352 (1981). The plaintiff should be allowed to make its case to the Court to avoid any unconscionable result.

The Court will overrule the demurrer.